Judges of the United States Court of Appeals for the 2nd Circuit. Hear ye, hear ye, hear ye. All persons having business before this, a State Attorney of the United States Court of Appeals for the 2nd Circuit, draw near, give your attention, and ye shall be heard. I'll note that Judge Kearse is appearing remotely via video, but she looks as though she's right here, that picture quality is so good. So Judge Kearse, you're able to hear us and see us okay? I can, can you hear me? Loud and clear. So this is the marvels of modern technology, which we've become used to, obviously, over the last couple of years. But delighted that this is all set to work. So, we've got, as I said, the one argument, that is in Sessa versus United States. Let me just make sure council are prepared. So Mr. Wallenstein, you've got ten minutes, but you've reserved two minutes for rebuttal. So that gives you eight minutes out of the gate. Yes, Your Honor. So you may proceed. I don't know that- And you're free to not wear a mask, but if you want to wear a mask, you can too, just stay close to the microphone. I prefer not to at this point. Good morning, Judge Sullivan, Judge Robinson, Judge Kearse. This case has but one issue, as you know, because you decided the issue. That whether the fact that Mr. Sessa's 924 may have been based on one of two different predicates, the murder or the murder conspiracy, and that issue, it seems to me, that this court's opinion in the Hayward case controls that issue. Well, before we get there, I'm sorry to interrupt you, but I did want to ask about the concurrent sentence doctrine. I mean, we've got three concurrent life sentences, which will all have to be served before the five year mandatory consecutive even kicks in. And so, isn't this sort of quintessentially a case where there's no need even to decide this issue? I know that's a little odd since the circuit is what I told you to brief it. Well, I see your point. I have often facetiously suggested that the government may want to prop him up for five years after he dies. Well, I recall as district judge, I mean, handing down a sentence like this that I had to, it was mandatory sentences, and the defendant looked at me quizzically and said, you mean that if I die and then come back, I have to serve another five years? Right, and that's- Yeah, that's right. That's, we've been there and done that, Judge. But Mr. Sessa wanted to take this point up, and this court granted a certificate of appealability on the issue, and I suppose that the real question has to do more with whether or not the murder conspiracy and the murder count, the two counts, if it's unclear as to which one served as the predicate as here. Because Judge Weinstein obviously did not have the benefit of later jurisprudence at the time that the jury was instructed. And I think that the real reason we're here, in spite of the fact that, as you note, this will really not benefit Mr. Sessa. But I assume that this court granted the certificate to decide the question for other cases where it might very well matter, and that's where I think that Hayward comes in. So for Mr. Hayward, it certainly mattered as to which of the conspiracies his 924C was based upon, because he's not serving a life sentence. Well, isn't this case really more like Eldridge, United States versus Eldridge, in which the facts underlying the conspiracy and the substantive murder counts are all completely intertwined? In fact, they're identical, really, right? The only difference is that for the conspiracy, you need some evidence of an agreement with somebody else. But otherwise, the evidence of the two crimes, or really three crimes, is completely intertwined, isn't it? Well, it's intertwined except that Sessa's defense was, I had nothing to do with it, and Ambrosino lied, and he's actually the guy who shot him. Now, whether that's far-fetched or not, and the jury convicted him- But they convicted him, obviously. They did, yes. But if that, in fact, was a viable defense, or at least an arguable defense at the time, I think that takes the 924 out of the Eldridge intertwining issue. And I see it that if the jury is not properly instructed as to which count the 924C applies, does it apply to the conspiracy? Are you finding that the conspiracy is the predicate? Are you finding that the murder, the substantive murder, is the predicate? You've got to tell us which one you find, if you find it all, in order to support the 924C, and that's Hayward as well. And I think that perhaps the district courts need instruction from this court with respect to directing special verdicts, directing interrogatories to the juries. Because how else do we know? At the end of the day, the jury says, you're guilty of murder conspiracy, you're guilty of murder, you're guilty of 924C. And we don't know, because of the way the jury was instructed here, and I do not fault Judge Weinstein, obviously. Because of the way the jury was instructed here, we don't know which count they attached the 924C to. And I think that the district courts, and counsel, for that matter, when we're requesting jury instructions, we need that guidance from this court. So can I ask, you've sort of been comparing the facts of different cases. But when you read the sort of standards that both this circuit and even looking at other circuits seem to apply, they seem a little bit all over the map. I've seen no significant likelihood that they convicted on a non-qualifying predicate. It's overwhelmingly likely that they convicted on a qualifying predicate. I see harmless error, I see plain error. Do you have a proposal as to what the standard is we should apply in addressing a Yates issue when we're dealing with a Washington v. Davis non-qualifying predicate? I think that, I wasn't expecting that question, Judge Robinson. I think that what the court needs to do is really case by case. I don't know that- But what's the inquiry we're doing? In other words, what's the test against which we're evaluating the facts on a case by case basis? And whose burden is it and how would you articulate the burden? Well, to get back to the first part of your question, if plain error analysis applies under certain circumstances that we're aware of, that the court has given us instructions on in the past. So, if it's plain error, if it's not preserved, you'd have to go that route. But if the error was preserved, if an objection was made below it, then I think that the court needs to look to, I'm not even sure how to articulate an answer to that question. Okay, thank you. I think you need to look to really the facts of the case and the charges in that case to determine whether or not the court has properly applied, the district court that is, has properly instructed the jury as to the basis for the 924. We know the jury hasn't been properly instructed in light of what the US Supreme Court has now said. And so the question is, what's our standard for determining whether that then becomes reversible error, whether that compromises the 924 conviction? I don't want to say plain error because I think that only applies in certain circumstances. That's fine. I'm not even sure that- Does it apply to this case? I'm sorry, Judge? Does plain error apply to this case? Was there an objection made to the instructions that could have been corrected had the court been alerted? Well, there was no objection, in large part because Davis was a long way away at the time that Judge Weinstein instructed this jury. So yes, I think you do have to apply plain error analysis to this case, simply because the error wasn't preserved, it was not objected to. Nobody knew to do that, but I think that's where you're at. When plain error analysis is applied, the burden is on the defendant. If it were a harmless error analysis, the burden would be on the government. Absolutely correct. Of course, Judge Kearse. But I think, unfortunately, in this case, I think you have to apply the plain error analysis  Although not at the time that he made the instructions. All right, any other questions, Judge Kearse? Thank you. Judge Robinson? All right, well, you've got two minutes for a rebuttal, so we'll hear from you again, Mr. Wallenstein, but now we'll hear from Ms. Gettys for the government. Thank you, Your Honor. Thank you. Good morning. May it please the court, my name is Elizabeth Gettys, and I'm an assistant United States attorney in the Eastern District of New York. The district court's order denying Michael Sessa's motion for habeas corpus should be affirmed. Here, the firearms conviction that Michael Sessa was convicted of necessarily relied on the categorical crime of violence, namely the murder of Anthony Coluccio. The defendant cannot sustain his burden in showing that the error in the instruction affected his substantial rights. And moreover, under the court's concurrent sentence doctrine, because the defendant is facing three additional life sentences on counts that remain undisturbed, there is no reason for this court to reach these issues in this case. Well, that's where, I mean, you said moreover, but that would seem to be where we would start, according to you, right? Yes, Your Honor. I think the court can and should decline to even consider the merits of the case based on the concurrent life doctrine. I guess, moreover, it also did not substantially affect Michael Sessa's rights for the reasons that I initially stated. Am I right in understanding that the concurrent sentence doctrine is a discretionary one? It gives courts authority to decline to reach the merits, but there's nothing about it that would compel us to decline to reach the merits. Yes, I think under the court's decision in Casere, it is in your discretion. But here, given the fact that Michael Sessa has three other sentences and it would make no difference, the court can and should exercise its discretion here to not move forward. But even if it did, the government submits that the defendant cannot, excuse me, Michael Sessa cannot sustain his burden. If the court has no further questions, the government will rely upon its brief for the remainder of the argument. I'd like to hear your answer to the question I asked your counterpart, which is, I think you said, shoot, I forgot to write it down. You used the term necessarily relied, the conviction necessarily relied on. Is that the standard? It's, the government submits that it is the defendant's burden to show that the error affected his substantial rights. And it is true that this court has used different language in assessing how to meet that burden. Undoubtedly, overwhelmingly, necessarily. The government submits that applying any of those standards, Michael Sessa cannot meet its burden. And that it is, in fact, Michael Sessa's, the petitioner's, burden to show it. How do we reconcile that with, it seems as though Yates' issues in particular have been identified as subject to harmless error. Is that been superseded by subsequent case law or? I think, Your Honor, in Eldridge, this court talked about addressing the harmless error standard. And then went on to say that here, however, it's the defendant's burden to show that it, so the defendant's burden, not the government's burden in proving harmless error. It's the defendant's burden in proving that the defendant's substantial rights were affected. And I think it then goes on to say that it was, they have to show that where it was overwhelmingly likely that any reasonable juror would have convicted on the basis of the government's primary theory. Are there any other questions for the government? Well, I guess the overwhelmingly likely part is, I mean, that's, the court does that inquiry. The defense has to, the petitioner has to overcome that standard. That's, I think, some of the confusion. So they have to show that it wasn't overwhelmingly likely. The government has to show that it was overwhelmingly likely. The court has to conclude that it was overwhelmingly likely. I think that there is confusion as to what is the particular standard. But again, I think under any of those standards here, where the evidence at trial was solely that the defendant used a 38 caliber revolver to shoot Anthony Coluscio and kill him, and the jury convicted Michael Sessa of that murder. It is, in fact, overwhelmingly likely that the jury made that determination, that the jury rested the 924C conviction on the murder. May have also relied on other theories, the tomb charge murder conspiracies that the jury also convicted of. But I think applying any of the standards that the court, any of the language that has been used in these cases. Here, the defendant cannot sustain his burden. I didn't directly answer your question. All right. Hearing no further questions, then I guess- Thank you. You can rest on your brief. And we'll hear from Mr. Wallenstein for two more minutes. Just very briefly, in response to your last comment, Judge Sullivan, I think the government bears the burden of showing that it's overwhelmingly likely. The defendant has no burden at trial. We all know that. And I don't think- Well, excuse me, your burden on this appeal is to show that there was plain error. And you have to basically show that substantial rights were affected, right? Correct. But I still think it's the government's, because I can show that his rights are affected. But I think the government then has, we have to move forward with that. And I think the government then has to show that it's overwhelmingly likely that the jury chose the correct predicate, that they rested the 924 on the appropriate predicate and not on either the inappropriate predicate or in a way that we can't tell which one. Which is the situation we have here? I mean, I guess it seems to me that after Elbridge, I mean, that the inquiry as to whether it's overwhelmingly likely. I'm not sure what that is. It doesn't sound good. Wait a second. It doesn't sound good at all. Sounds like it's phone based. Yeah, I think if people have phones that are on, they sometimes show you an emergency and you can't silence them. My phone's off. Yeah, mine too. So in any event, it would seem to me that in situations where it is overwhelmingly likely that the jury relied on the valid predicate, then a defendant or a petitioner would not be able to show that his substantial rights were burdened. Is that fair? Well, I think that, I think they're intertwined. If the government can show that it's overwhelmingly likely, then even if his rights were affected, I don't think I win. So that's the case. I mean, I guess that's the argument here. Here we have a situation where the testimony about the murder is that your client put three bullets in the head of the victim. There's also testimony that he agreed with others concerning that. Now there's, I guess the defense theory is that someone else did the shooting. Right, and that Ambrosino lied about Sess's involvement. That was the defense theory. But they convicted on the substantive murder. So they either rejected the defense that somebody else did it, or they found your client liable under a Pinkerton rating and abetting theory. But any of those would be sufficient to sustain the valid predicate. And is there any reason to think that the jury didn't, that the jury could have convicted on the substantive murder. And yet relied on something else to convict on the 924C. The only, frankly the only thing I can think of is that they would have, if they had convicted him on a Pinkerton or an aiding and abetting theory, rather than on him being the primary actor. Right, but that wouldn't- That wouldn't change the underlying murder from being a crime of violence, right? It would not. Okay. It would not. All right, any other questions? The alarm stole some seconds from you, so. Okay, well thank you. I view it as having been saved. No, not true, not true. Very ably argued. Thank you for doing this, Mr. Wallenstein, appreciate it. Thank you both for your arguments. We will reserve decision. That concludes the oral arguments for today. So we will reserve on the other two as well. Before we adjourn, let me just thank our courtroom deputy, Ms. Beard. Let me thank the technical folks who really amazingly make this go so swimmingly, even though Judge Kierse is in a different place. So I'm very appreciative, and we're lucky to have the support we do on this court. So, Ms. Beard, you can adjourn the court. Court is adjourned.